UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| JAMEEL SHABAZZ and, | ) | 07 – CIV – 00126 (VM) (DCF) |
| ALFRED TORRES Individually, and on | ) |  |
| Behalf of All Others | ) |  |
| Similarly Situated, | ) | ECF Filed |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MORGAN FUNDING CORP., DANIEL | ) | **Oral Argument Requested** |
| MACKLE, DANIEL LOUIS, and | ) |  |
| FRANK CARDIA, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____ )

# DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER RULE 23
## AND
## IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DECERTIFY PLAINTIFFS' 29 U.S.C. §216 (b) COLLECTIVE ACTION

LAWRENCE R. GELBER
ATTORNEY AT LAW
THE VANDERBILT PLAZA
34 PLAZA STREET – SUITE 1107
BROOKLYN, NEW YORK 11238

**www.GelberLaw.net**
Phone: (718) 638 2383  Fax: (718) 857 9339
GelberLaw@aol.com     Cell: (917) 992 3596

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………..……………ii

INTRODUCTION………………………………………………………………..…………1

PRELIMINARY STATEMENT………………………………………………………..……1

THE ALLEGATIONS OF THE COMPLAINT……………………………………….……3

DISCOVERY……………………………………………………………………….………6

         1.    GARY UNGER – NJ…………………………………………………….……7

         2.    GUY LA MURA – NJ…………………………………………..…………8

         3.    ALBERT BISHAI – NY…………………………………………….………8

         4.    MATHEW MCCULLOUGH – NJ………………………………….………8

         5.    CHRISTOPHER RICCIARDI – NJ……………………………….…………9

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
UNDER RULE 23 MUST BE DENIED AND
DEFENDANTS' CROSS-MOTION TO DECERTIFY
THE 29 U.S.C. §216 (b) COLLECTIVE ACTION MUST BE GRANTED………………..10

ANALYSIS……………………………………………………………………..…………10

    A.    NUMEROSITY……………………………………………………………11

    B.    COMMONALITY AND PREDOMINANCE………………………………12

    C.    TYPICALITY………………………………………………………………16

    D.    ADEQUACY………………………………………………………………17

    E.    SUPERIORITY…………………………………..…………………………18

CONCLUSION…………………………………………………………………………20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                      <u>PAGE NO.</u>

*Amchem Products, Inc. v. Windsor*, 521 US 591 (1997)…………………………....…13, 15

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009)…………………………………4, 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)……………………....…4, 5

*Berger v. Compaq Computer Corp.* 257 F.3d 475, 481 (5th Cir. 2001)…………………10

*Consolidated Rail Corp. v. Town of Hyde Park*,
47 F. 3d 473 (2d Cir. 1995)……………………………………………………………11, 18

*East Tex. Motor Freight System, Inc.* v. *Rodriguez,*
431 U. S. 395, 403 (1977)……………………………………………………..……..17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)…………………………………………..11

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968)…………………………………10

*General Telephone Co. of Southwest v. Falcon,*
457 U. S. 147 (1982)…………………………………………………………..……17

*Georgine v. Amchem Products, Inc.*, 83 F. 3d 610 (3rd Cir. 1996)………………………19

*Hosking v. New World Mortg., Inc.,*
602 F. Supp. 2d 441 (E.D.N.Y. 2009)…………………………………………..……7n.9

*Jones v. Cassey's General Stores*,
538 F. Supp. 2d 1094 (S. D. Iowa. 2008)…………………………………...……………5

*Marcera v. Chinlund*, 595 F. 2d 1231 (2nd Cir. 1979)…………………………………18

*Robidoux v. Celani*, 987 F. 2d 931 (2d Cir. 1993)………………………………………11

*Rutledge v. Electric Hose & Rubber Company,*
511 F.2d 668, 673 (9th Cir. 1975)……………………………………………..……10

*Schlesinger v. Reservists Comm. to Stop the War,*
418 U.S. 208, 94 S.Ct. 2925, (1974)……………………………………..……..16, 17

*Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976)……………………..……..12

*Vergara v. Hampton,* 581 F.2d 1281 (7th Cir.1978
*cert. denied,* 441 U.S. 905, 99 S.Ct. 1993 (1979)... …………………………………………12

S<small>TATUTES</small>, R<small>ULES AND</small> T<small>REATISES</small>

Federal Rules of Civil Procedure

Rule 8(a)(2)………………………………………………………………………………4

Rule 23………………………………………………………………………..………*passim*

Rule 23(a)…………………………………………………………………….....10, 11

Rule 23(a)(2)……………………………………………………………………..12

Rule 23(b)………………………………………………………………………...………11

Rule 23(b)(3)…………………………………………………….……………..2, 11, 12, 13, 18

Rule 23(b)(3) Advisory Notes to 1966 Amendment………………………………..………19

United States Code and Code of Federal Regulations

29 U.S.C. §§ 201 *et seq.* (Fair Labor Standards Act [FLSA])……………..….…2, 4, 5, 12

29 U.S.C. §213…………………………………………………………………….2

29 U.S.C. §216 (b)……………………………………………………………….2, 10, 20

29 U.S.C. § 255……………………………………………………………….7, 7n.9

29 C.F.R. § 541…………………………………………………………………………….2

State Statutes

12 NYCRR 138-2.1 *et seq.*…………………………………………..………2, 2n.3

N.Y. Lab. Law § 191-b………………………………………………………2n.3

New York Labor Law, Article 6……………………………………………………2, 2n.3

New York Labor Law, Article 19……………………………………………………2

N.J.S.A. §34.11-56a *et seq.*………………………………………………...………..2

Treatises

1 *Newberg On Class Actions 2d,* (1985 Ed.) § 3.05)……………………………..……11

7A Wright, Miller, & Kane 518— 519…………………………………………………..13

## INTRODUCTION

Defendants Morgan Funding Corp. (MFC), Daniel Mackle (Mackle), Daniel Louis (Louis)[1] and Frank Cardia (Cardia) oppose Plaintiffs' motion to certify a class under Rule 23 of the Federal Rules of Civil Procedure (F. R. Civ. P.) because Plaintiffs fail to meet this Circuit's standards for certification, as detailed below.  Concomitantly, and for similar reasons, Defendants' cross-motion to decertify the collective action brought pursuant to 29 U.S.C. §216(b) should be granted.

## PRELIMINARY STATEMENT

Plaintiff Jameel Shabazz (Shabazz) filed a Complaint in January 2007 and then Alfred Torres (Torres) joined him in a "First Amended Complaint", on February 8, 2008 (Docket # 39)(Complaint or Compl.).

Virginia resident Shabazz worked at MFC in its New York office for one month, [2] and Torres, according to the Complaint, worked in MFC's Jersey City, New Jersey office. Although the Complaint states that Torres' Opt-In form is annexed to it as an exhibit, only Shabazz's is annexed (Docket # 39). The Opt-In form attributable to "Torres" (Docket # 74-3) is blank in all respects except for an illegible signature. Nor is there any "Declaration" from Torres, or any confirmation from Torres that his claims are not time-barred.

---

[1] As Plaintiffs' counsel has been made aware, Mr. Louis (whose full name is Robert Daniel Louis) has filed a petition in bankruptcy (chapter 7) in the United States Bankruptcy Court for the Southern District of New York, 08-23769-RDD, and accordingly, he benefits from the automatic stay provisions of Section 362(a) of the Bankruptcy Code, 11 U.S.C.§ 362(a).

[2] Mr. Shabazz's Opt-In form alleges he worked from February 2006 to March 2006. His conflicting "Declaration" of December 13, 2007 states he worked from February 2006 to May 2006. (*See* Exhibit B to Plaintiffs' Memorandum of Law in Support of their motion [Pl. Memo]. Plaintiffs' counsel has not supplied a declaration attesting to the bona fides of the exhibits annexed to their brief.)

The claims are asserted under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, the New Jersey Wage and Hour Law, N.J.S.A. §34.11-56a *et seq.*, and the "New York Labor Articles 6 and 19 and the New York Codes Rules and Regulations §§138-2.1 *et. seq.* ("New York Labor Articles")"[3] (Compl. ¶ 1) to recover supposedly unpaid minimum wages and overtime. However, no Opt-In plaintiff has alleged failure to pay minimum wage on the Opt-In form, limiting his or her specific claims to non-payment for supposed overtime hours. Plaintiffs assert that the action is "brought as a nationwide collective action pursuant 29 U.S.C. §216(b) and as a state-law class action under Fed. R. Civ. P. 23(b)(3)". (Compl. ¶ 1).

Defendants filed their Answer (Ans.)(Docket # 46) on May 16, 2008, denying the substantive allegations of the Complaint and noting that the rote allegations of numerosity, commonality, typicality, adequacy and superiority were conclusory. (Ans ¶¶ 63-68). Critically, Defendants expressly assert that no putative class member worked more than 40 hours per week (Fifth Affirmative Defense), and that Defendants are in any event beneficiaries of the outside sales and professional exemptions to the FLSA, 29 U.S.C. §213 and 29 C.F.R. § 541, exempting them from the overtime provisions of the FLSA. (Seventh and Eight Affirmative Defenses).

Apart from the opt-in forms, many of which are time-barred (*see* discussion below) and a small handful of "declarations" signed by a few putative class members at or around the time they opted-in, no plaintiff has come forward with any documentary evidence contradicting MFC's payroll records in order to demonstrate overtime hours,

---

[3] Plaintiffs fail to cite to a particular section with 12 NYCRR 138-2.1, and have failed to take any steps under the adjudicatory hearing provisions provided by the New York Code of Rules and Regulations. Moreover, New York Labor Law, Article 6, expressly permits commission contracts for salesmen. N.Y. Lab. Law § 191-b.

and no plaintiff willing to testify (most were not, as discussed in detail below) has provided credible testimony that overtime hours were worked.

As can be seen from the seventeen sworn statements of other former MFC employees and managers[4] annexed to the accompanying Declaration of Lawrence R. Gelber dated December 18, 2009 (Gelber Dec.), and from testimony elicited at depositions conducted in this matter, (i) MFC did not permit overtime, (ii) each office of MFC prominently displayed posters regarding employee wage rights, and (iii) no employee ever complained or protested non-payment while working at MFC despite the existence of fully disclosed policies regarding wage rights.

The claims are frivolous. They exist only by virtue of the simplicity of signing an opt-in form and leaving the rest to the lawyers. Nevertheless, the motion must be denied because, as noted above and detailed below, it fails to meet the requisite standards.

## THE ALLEGATIONS OF THE COMPLAINT

The Complaint asserts that Plaintiffs are former "loan officers employed by Defendants" (Compl. ¶1) in the "mortgage banking services business" (Compl. ¶9) in MFC's New York, New Jersey and other offices (Compl. ¶¶ 9, 14, 15) where they sold "residential mortgage loans" (Compl. ¶ 17) to potential customers over the telephone (Compl. ¶ 20).  All the loan officers "had essentially the same job duties." (Compl. ¶16).

The Complaint alleges, without credible source, without investigation and without regard to truth, that (i) "Plaintiffs and *all* similarly situated loan officers" (Compl. ¶28, emphasis provided) worked in excess of 40 hours per week, were required to arrive

---

[4] MFC ceased operations in late 2007. *See* footnote 17 *infra*, for a list of the signatories and the sub-class to which each belongs.

early, work late and work on weekends[5] and (ii) they were not paid for some unspecified number of overtime hours they supposedly worked. (Compl. ¶29). The Complaint also conclusorily alleges that Plaintiffs were not paid minimum wage. (Compl. ¶7).

Similarly, the Complaint formulaically alleges various statutory elements of its claims, without source or factual support, including such broad accusations as "Defendants have operated under a scheme" (Compl. ¶ 43) and "routinely and regularly failed to pay class members the applicable minimum wage"[6] (Compl. ¶ 47) pursuant to a "company-wide compensation policy" that "has been applied to *all* members of the [putative] FLSA Class" (Compl. ¶ 10, emphasis added).

While no motion to dismiss the Complaint has been made, it is significant its allegations do not withstand scrutiny under applicable standard of review. In *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009) the Supreme Court summarized that standard. While noting that: "[u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a `short and plain statement of the claim showing that the pleader is entitled to relief'" 129 S.Ct. at 1949, it further noted that though "the pleading standard Rule 8 announces does not require `detailed factual allegations,' [. . .] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers `labels and conclusions' or `a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders

---

[5] Opt-In Plaintiff Mathew McCullough swore the loan officers in the Jersey City, New Jersey branch of MFC only worked Monday through Friday ("we all left at five 'o'clock" on Fridays.) (McCullough Tr. 20). Opt-In Plaintiff Christopher Ricciardi also swore the hours were just five days a week, but loan officers would get out "a little early on Friday." (Ricciardi Tr. 58)

[6] **All the Opt-In forms pertain only to overtime; none pertain to minimum wage.**

4

`naked assertion[s]' devoid of `further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

"Where a complaint pleads facts that are `merely consistent with' a defendant's liability, it `stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556-57) This standard is not a "heightened fact pleading" requirement, but "simply calls for enough fact **to raise a reasonable expectation that discovery will reveal evidence of** [the claim]." *Twombly,* 550 U.S. at 556. (Emphasis added.) This principle squarely applies to claims brought pursuant to the FLSA.

In *Jones v. Cassey's General Stores*, 538 F. Supp. 2d 1094 (S. D. Iowa. 2008), the Court said:

"Here, Plaintiffs' Amended Complaint provides only generic, conclusory assertions of a right to relief under the FLSA minimum wage provisions. Indeed, there is not, on the face of the Amended Complaint, a single *factual* allegation that would permit an inference that even one member of the Plaintiffs' 1103 collective has "a right to relief above the speculative level."*Twombly,* 127 S.Ct. at 1965. Accordingly, the Court finds that Plaintiffs' Amended Complaint, to the extent it asserts an FLSA minimum wage claim, is implausible on its face and would not survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. Accordingly, the Court concludes that the magistrate judge erred in granting Plaintiffs leave to amend with regard to the FLSA minimum wage claim. [*Citation omitted*]*."*

Needless to say, not only does the Complaint against MFC and others fail to comply with applicable pleading standards for an FLSA claim, but discovery revealed no

5

evidence of any of the claims asserted. In fact, discovery demonstrated that Plaintiffs cannot meet the requisites of Rule 23.

### DISCOVERY

On or about March 30, 2009, Defendants served notice to briefly depose each Opt-In Plaintiff from April 20 through May 1, 2009. Plaintiffs' counsel objected, and instead of producing each Opt-In, most of whom evidently were unwilling to testify, proposed just ten plaintiffs as a representative sample of the "class". Neither Mr. Shabazz nor Mr. Torres, each of whom is now being touted as capable of representing the interests of the class, was offered.

The parties agreed to depose the following ten "overtime" Opt-Ins (there are no "minimum wage" Opt-Ins.):

1.  Albert Bishai (Bishai)
2.  Michael D'Amico (D'Amico)
3.  Matthew McCullough (McCullough)
4.  Scott McKenzie (McKenzie)
5.  Guy La Mura (LaMura)
6.  Christopher Nangano (Nangano)
7.  Daniel Ribaudo (Ribaudo)
8.  Chris Ricciardi (Ricciardi)
9.  Gary Unger (Unger)
10. Joseph Verdicchio (Verdicchio)

Of those ten "representatives", fully five failed to appear, with no justification for such failure. The five no-shows were D'Amico, McKenzie, Nangano, Ribaudo and Verdicchio[7]. The failures were unexcused. By way of example, Nangano was first scheduled for April 28, 2009. Defendants consented to an adjournment until August 11,

---

[7] Evidently, Verdicchio did not appear to testify because he knew the premise of the Complaint was false, and did not want to provide such testimony, as can be inferred reasonably from his Declaration disputing the Opt-In allegations executed on November 18, 2009, annexed to the Gelber Dec. as part of the collective Exhibit 1.

2009. Nangano failed to appear. Defendants consented to a third adjourned date, August 13, 2009. Nangano yet again failed to appear. [8]

Of the five who did appear, two – LaMura and Unger – were office managers – employers, not employees - whose contracts with MFC expressly permitted them to control their own hours.

## 1.    Gary Unger - NJ

Opt-In Mr. Unger, a manager of MFC's New Brunswick, New Jersey branch office, who had the ability to hire and fire loan officers (Unger Tr. 20) testified that he was an "employer" at MFC (Unger Tr. 42), who had **not** worked as a loan officer, as alleged in the Complaint, since he became a branch manager in late September 200**3** (Unger Tr. 41), more than three years before the claim was brought in 200**7**.  Unger's claim is thus barred by the two-year limitations period set forth at 29 U.S.C. § 255.[9] He also testified that he had "no gripes" about his compensation as a loan officer (Unger Tr. at 17). (The Unger Transcript is Gelber Dec. Ex. 3).)

Mr. Unger also testified that he was aware of labor laws and that he operated the New Brunswick branch office "in full compliance with the law." (Unger Tr. 33, 35).

As such, and putting aside the time-bar, Mr. Unger has nothing in common with any putative member of the class.

---

[8] The transcript of Nangano's failure to appear is Gelber Dec. Ex. 2.

[9] 29 U.S.C. § 255 provides: "if the cause of action accrues on or after May 14, 1947 – it may be commenced within two years after the cause of action accrued, and *every such action shall be forever barred unless commenced within two years after the cause of action accrued*, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued" (emphasis added.).  *See also, Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 446 (E.D.N.Y. 2009).

### 2.    <u>Guy La Mura - NJ</u>

Opt-In Mr. LaMura, a manager (LaMura Tr.  8) of MFC's Fairfield, New Jersey

branch office, who had the ability to hire and fire loan officers, was terminated by MFC

in April, 2005 (LaMura Tr. at 13.) LaMura acknowledged that nobody told him he had to

work overtime. (LaMura Tr. 18.) (The LaMura Transcript is Gelber Dec. Ex. 4).

### 3.    <u>Albert Bishai - NY</u>

Unlike branch managers Unger and LaMura (atypical of the other Opt-Ins), Bishai

was indeed hired as a loan officer. He was based in MFC's New York City branch at

Wall Street. In his Opt-In form, Bishai swore he started at MFC in August 2004, when in

fact he did not start until June 20, 2005 (Bishai Tr. 19, 45), *a full ten-month discrepancy*.

Bishai attributed the false date on his Opt-In form to "error" (Bishai Tr. 26), a ten-month

"error" in a lawsuit about time worked. MFC fired Bishai (Bishai Tr. 27) for excessive

lateness and absences. (Bishai Tr. 30, 31.) Bishai testified that there was never a time

when he was erroneously paid by MFC. (Bishai Tr. 41). (The Bishai Transcript is Gelber

Dec. Ex. 5).

### 4.    <u>Mathew McCullough - NJ</u>

McCullough worked as a loan officer for MFC at its Jersey City, New Jersey

branch for approximately three months[10], *after* this lawsuit was commenced.

(McCullough Tr. 7). Mr. McCullough was terminated for non-performance (McCullough

Tr. 14, 15), having closed only one loan despite making 30,000 telephone calls.

(McCullough Tr. 42). McCullough swore he received an hourly wage of $7.15 per hour

(McCullough Tr. 23), though the Complaint alleges that loan officers were compensated

---

[10] His Opt-In form claims employment from June through September 2007. He swore, however
that he started in July, 2007, allowing for the possibility that it was the very end of June.
(McCullough Tr. 13)

by commission. (Compl ¶26.) McCullough, atypical of the other putative class members and Opt-Ins, is not claiming he did not receive proper hourly wages, but rather that he had precisely 144 hours of unpaid overtime. (McCullough Tr. 26.)

McCullough swore that he filled out his time records at MFC "falsely", claiming he was "not allowed" to fill them out truthfully. (McCullough Tr. 28). Similarly, though McCullough was terminated for non-performance, he regularly lied in his 30,000 phone calls to potential clients that he was "very successful in helping homeowners…save…between five and $800 a month…." (McCullough Tr. 37).  Finally, McCullough acknowledged that there were "slackers" in the office who "left early" and "showed up late", claiming slackers were quickly terminated.  (McCullough Tr. 39, 40). (The McCullough Transcript is Gelber Dec. Ex. 6).

### 5. <u>Christopher Ricciardi - NJ</u>

Ricciardi was a salaried employee of MFC (Ricciardi Tr. 16), who worked Monday through Friday only (Ricciardi Tr. 58) at its Jersey City, New Jersey office (Ricciardi Tr. 70). Ricciardi's testimony was too rambling, disjointed and inconsistent to permit any sharp focus on facts. For example, he spoke about entities not at issue, such as an unrelated mortgage brokerage called National Future (Ricciardi Tr. 11,12) and Dan Dekleine, an MFC loan officer who made $100,000.00 per month[11] (Ricciardi Tr. 12, 13). Ricciardi first swore he never had any legal problems (Ricciardi Tr. 6) but then admitted to a marijuana arrest (Ricciardi Tr. 52.) He swore the marijuana case was dismissed (Ricciardi Tr. 53) but then was shown an "arrest and conviction" record reflecting a sentence of community service and a fine. (Ricciardi Tr. 55-57). Mr.

---

[11] An atypical member of the putative class, Mr. DeKleine disputes the class contentions in his Declaration dated December 3, 2009 submitted as part of Gelber Dec. Ex. 1.

Ricciardi either failed entirely or had difficulty remembering many aspects of his employment at MFC (Ricciardi Tr. 9, 10, 37, 43, 55, 69 and 73), even though he claimed to be not under medication or on drugs at the deposition (Ricciardi Tr. 19). His deposition had to be rescheduled due to his failure to show up two days prior, but he could not remember the reason for the adjournment, though he thought he might have been playing hockey. (Ricciardi Tr. 73.) (The Ricciardi Transcript is Gelber Dec. Ex. 7).

MFC's payroll records, placed into evidence at Mr. Ricciardi's deposition however, did show he received compensation in various categories, including salary, bonus and commission. (Ricciardi Tr. 61, 62 and 67).

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
UNDER RULE 23 MUST BE DENIED
AND
DEFENDANTS CROSS-MOTION TO DECERTIFY THE 29 U.S.C. §216(b)
<u>COLLECTIVE ACTION MUST BE GRANTED</u>**

## <u>ANALYSIS</u>

Rule 23(a) specifies that:

one or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The plaintiff bears the burden of establishing that all requirements of Rule 23(a) are satisfied. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 561 (2d Cir. 1968); *Berger v. Compaq Computer Corp.* 257 F.3d 475, 481 (5th Cir. 2001). Failure to meet any one of the requirements of Rule 23 precludes certification of a class. *Rutledge v. Electric Hose & Rubber Company,* 511 F.2d 668, 673 (9th Cir. 1975).

In addition to meeting the four conjunctive requirements of Rule 23(a), a class action must also qualify under one of the three subdivisions of Rule 23(b) *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Plaintiffs have indicated that they are proceeding under Rule 23(b)(3), which provides, in pertinent part:

> Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> ***
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because the Plaintiffs fail to demonstrate one or more of the requisites, as set forth below, the motion for class certification must be denied.

## A.     Numerosity

Plaintiffs rely on *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F. 3d 473 (2d Cir. 1995) which certified a defendant class of up to 700, for the proposition that numerosity is "generally" satisfied when the putative class exceeds forty members. (Pl. at 8). *Consolidated Rail* based the presumption on a treatise, 1 *Newberg On Class Actions 2d,* (1985 Ed.) § 3.05). *Id.* at 483.

The test, however, is based not so much on a set number but rather practicability. *See e.g.*, *Robidoux v. Celani*, 987 F. 2d 931 (2d Cir. 1993). In this instance, each former MFC loan officer who has not expressly refuted the evidently fictional account of routine unpaid overtime (*see, e.g.*, Gelber Dec. Ex. 1) is easily identifiable.  The refutations, set forth in the declarations annexed to the Gelber Declaration as collective exhibit 1, emphatically dispel the fundamental conclusion propounded by Plaintiffs that they worked overtime (putting aside MFC's payroll records

which show no overtime). The refuting loan officers, are presumably members of the putative class. Thus, the actual number of loan officers who (i) claim they worked overtime and (ii) would be willing to testify at trial to that effect, are *de minimus*. If the "representative sample" ten plaintiffs scheduled for deposition is any indication, fully 50% of the non-refuting "class members" simply will fail to appear to testify at trial.

Thus, even though plaintiffs are not required to specify the exact number of persons in the class, *Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir.1978), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1993 (1979), they cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity, *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). Finally, as can be seen by collective Exhibit 1 of the Gelber Declaration, the representative sample of loan officers and managers who utterly refute the undocumented and unsourced allegations of the Complaint exceeds the representative sample of just five deponents actually produced by Plaintiffs and constitute approximately the same number of declarants now offered by Plaintiffs.

The numerosity test is not met.

**B.    <u>Commonality and Predominance</u>**

Rule 23(a)(2) requires common questions of law or fact among the class members. And because Plaintiffs are proceeding under Rule 23(b)(3), those common questions must predominate.  Plaintiffs fail this standard.

Plaintiffs assert claims under three different statutory schemes: (i) the FLSA, New Jersey Law, and New York Law.

Neither the Complaint nor the motion now filed by Plaintiffs advises how many of the Opt-Ins, much less how many putative class members, were subject to New

Jersey Law or New York Law, how many were "loan officers" (employees) and how many were "branch managers" (employers). Of the ten Opt-Ins scheduled for depositions as a "representative sample" of the entire group of Opt-Ins, 50% failed to show up. Of those who did show up as "representative samples" of the membership of the putative class, 40% (forty percent) were New Jersey *branch managers*. In fact, 80 % (eighty percent) of the "representative deponents" were subject to New Jersey, not New York law, and the *only* representative deponent subject to New York law, Albert Bishai, was fired by MFC for not showing up to work.  Also 40% (forty percent) of the "representative deponents" were terminated for either insufficient hours (Bishai) non-performance (McCullough) or other reasons (LaMura), squarely raising the issue of whether 60% of the Opt-Ins chose to opt-in for retaliatory reasons.[12]

In *Amchem Products, Inc. v. Windsor*, 521 US 591 (1997), the Supreme Court noted that the requirement of Rule 23(b)(3) that common questions of law or fact *must* "predominate over any questions affecting only individual members." *Id* at 622. The predominance requirement inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Id* at 623. The "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *See* 7A Wright, Miller, & Kane 518— 519" *Id.*

---

[12] Plaintiffs have failed to provide a basis to support any assumption that the distribution of the other Opt-Ins would differ from the representative sample.

The proposed class here is not cohesive. There are at least eight[13] distinct sub-classes as demonstrated by the Opt-Ins, each of which would raise different issues of both law and fact, none of which would clearly predominate:

1.    Resigned New Jersey loan officers;
2.    Resigned New Jersey branch managers;
3.    Resigned New York loan officers;
4.    Resigned New York branch managers;
5.    Terminated New Jersey loan officers;
6.    Terminated New Jersey branch managers;
7.    Terminated New York loan officers;
8.    Terminated New York branch managers.

In addition, there is a substantial representative sampling of those from the first four groups who have sworn that if called to testify at trial, they would (if they were loan officers) that:

> "When I was hired, I was informed and instructed that work hours were strictly regulated. Specifically, work hours were from 10:00 a.m. to 8:00 p.m. Monday through Thursday and 10:00 a.m. to 6:00 p.m. on Friday. We received an hour off for lunch Monday through Friday and 45 minutes for dinner Monday through Thursday.  This schedule resulted in 40 hours of work per week."

Similarly, if they were branch managers, they would testify at trial that:

> "Whenever new loan officers were hired at my branch, I informed each new hire that work hours were from 10:00 a.m. to 8:00 p.m. Monday through Thursday and 10:00 a.m. to 6:00 p.m. on Friday. I informed new hires that they had an hour off for lunch Monday through Friday and 45 minutes for dinner Monday through Thursday. This schedule resulted in 40 hours of work per week."

*See* Gelber Dec, Ex.1.

---

[13] The Opt-Ins have asserted claims only for non-payment of overtime, as set forth in each Opt-In form. The Complaint, however, asserts failure to pay minimum wage. This dichotomy between minimum wage claims and overtime claims generates *sixteen* discrete sub-classes, destroying any semblance of cohesiveness. Plaintiffs acknowledge only two sub-classes – New York and New Jersey. (Pl. Memorandum at 1).

As the Supreme Court noted in *Amchem Products*, *supra*, (where the primary class allegation was that the putative class members all were exposed to asbestos), the predominance standard could not be met where there were too many disparate issues. The Court pointed to the observations of the Circuit court that Class members were "exposed to different asbestos containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only a symptomatic plural [sic] changes, while others suffer from lung cancer, disabling asbestos is, or from mesothelioma . . . . Each has a different history of cigarette smoking, a factor that complicates the causation inquiry." *Id* at 624. Finally, the Supreme Court noted: "[d]ifferences in state law, the Court of Appeals observed, compound these disparities. (Citations omitted.)" *Id*.

Though factually distinct, the *Amchem Products* analysis applies here. Some putative members claim they worked weekends, some do not make such claim. Some worked in New York, some in New Jersey. Some worked for years, some worked for weeks. Some were terminated, some resigned. Some claim they only received commissions and some claim they received an hourly wage. Some putative class members were part of management, controlling their hours and the hours of the loan officers who worked in their branches and others were loan officers with ostensibly no control.

The differences outweigh the similarities by a wide margin and no one set of circumstances predominates over another.

C.    **Typicality**

A prerequisite for certification is that the class representatives be a part of the class and possess the same interest and suffer the same injury as class members. *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, (1974). A representative's individual claim must be typical of the claims of the class members he seeks to represent. *See* Rule 23(a)(3) (requiring that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class").

Plaintiffs confess to the existence of at least two sub-classes (Pl. Memo at 1) and defendants have identified as many as sixteen subclasses (supra at 14 and 14n.13). Shabazz himself submitted conflicting statements (on his Opt-In form, Shabazz swears he only worked one month and in his Declaration he swears he worked three (Pl. Memo Ex. B.)

In addition, many of the Opt-Ins appear to be time-barred, having left the employ of MFC more than two years before the claims were initially filed, including Torres [no employment dates on Opt-In form], Mark Andreotti [no employment dates on Opt-In form][14], Walter Cedeno [worked "*to* 200**5**"], Chris Dabiere [worked "to on or about 7/0**4**"], Peter Durichko [worked "to on or about 11/0**3**"], Victor Figueroa [no employment dates

---

[14] Mark Andreotti's Opt-In form (Docket # 84) is in any event negated by his Declaration dated November 18, 2009, Gelber Dec Ex. 1, affirming that he never worked any overtime, and that it was common for most of the loan officers at the Jersey City, New Jersey branch of MFC to "leave work early."

on Opt-In form], Gabriel Flores [worked "to on or about 12/0**4**"], Frank Leon[15] [worked "to on or about June 200**4**"], Scott McKenzie [no employment dates on Opt-In form], Ben Magliochetti [worked "to on or about 12/0**4**"], Bradley Poch [worked "to on or about 10/0**3**"], Renee Rebello [no employment dates on Opt-In form], Christopher Searles [no employment dates on Opt-In form].

In further addition, Declarations by members of four of the sub-classes annexed to the Gelber Declaration reflect that the claims are fictitious, if not entirely, than certainly to a substantial segment of the putative class.

Mr. Shabazz's unsubstantiated claim for one month of overtime is not typical of any of the sixteen subclasses, or even of the eight subclasses that presumably seek overtime.

## D.   <u>Adequacy</u>

The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. See *General Telephone Co. of Southwest* v. *Falcon,* 457 U. S. 147, 157-158, n. 13 (1982). "[A] class representative must be part of the class and `possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc.* v. *Rodriguez,* 431 U. S. 395, 403 (1977) (*quoting Schlesinger* v. *Reservists Comm. to Stop the War,* 418 U. S. 208, 216 (1974)).

Here, only Shabazz, but not Torres, provided a "Declaration" (which conflicts with the information on his Opt-In form) "attesting to the pertinent facts of this case". (Pl.

---

[15] The signature on Frank Leon's Opt-In form does not even closely match the signature on Frank Leon's Declaration (compare Ex. A with Ex. D to Plaintiffs' Memorandum.)

Memo at 13). Shabazz presumably is a member of one of the two sub-classes referenced by Plaintiffs, leaving no representative of the other sub-class.

Thus, even if Shabazz could somehow bee deemed an "adequate" representative of the very small number of New York loan officers, there is no adequate representative of the vast majority of loan officers for the vast majority of them, who worked in MFC's various New Jersey offices.

Here, neither Shabazz nor Torres stepped forward to propound their own interests by appearing at a deposition, and Torres has not even bothered to (a) properly fill out a simple Opt-In form or (b) submit a perfunctory Declaration is support of his interests. And Shabazz cannot seem to get his story straight as to how long he even worked.

So, while Rule 23(a)(4) requires "merely an adequate [representative]" *Consolidated Rail Corp. supra,* 47 F. 3d 473, 483, the representative who is purportedly protecting the interests of the class, should be one who is at least protecting his own interests. *Id* at 484. (*Citing Marcera v. Chinlund*, 595 F. 2d 1231 (2nd Cir. 1979 [defendant class]). Neither Shabazz nor Torres are protecting themselves.[16]

**E.**   **Superiority**

Rule 23(b)(3) also requires that class action is  a superior means of adjudicating individual claims.

Here, in addition to the problems outlined in the preceding paragraphs and sections of this brief, it appears that while a handful of potential plaintiffs have very

---

[16] Defendants do not dispute the general capability of Plaintiffs' lawyers, but do note that the Supreme Court has indicated that in certain circumstances the failure to provide separate counsel for various sub-classes constitutes a failure to meet the adequacy provisions of Rule 23(a)(4). *Ortiz v. Fireboard Corp.* 527 U.S. 815, 119 S, Ct. 2295 (1999).

small claims (*i.e.* one month of supposedly unpaid overtime for Shabazz), many appear to assert claims in the tens of thousands of dollars. It is thus not a case where "the amounts at stake for individuals [are] so small that separate suits would be impracticable." Rule 23(b)(3) Advisory Notes to 1966 Amendment. And, as observed in *Georgine v. Amchem Products, Inc.*, 83 F. 3d 610, 632 (3rd Cir. 1996), the court must balance, in terms of fairness and efficiency, the merits of a class action against those of "alternative available methods" of adjudication.

Here, the proposed class action suffers serious problems in both efficiency and fairness. In terms of efficiency, there are simply too many uncommon issues, as manifested by the existence of at least sixteen sub-classes.

Putative Plaintiffs have a substantial stake in making individual decisions on whether and when to settle. So a Plaintiff with a $15,000.00 claim should not have to be tied to a Plaintiff with a $200.00 claim.

Plaintiffs here conclusorily assert, "a majority of Plaintiffs' claims arose in the state of New York" (Pl. Memo at 16), evidently based on the nine Declarations they were able to muster, eight of which were from Plaintiffs asserting they worked in New York. But MFC was a New Jersey company, headquartered in New Jersey, with multiple branch offices in New Jersey. There can be no reasonable dispute that MFC employed far more people in New Jersey than in New York, and it is unclear why Plaintiffs are asking a federal court sitting in New York to resolve the claims of New Jersey residents who worked in New Jersey for a New Jersey company. This class action thus suffers from serious problems in the fairness it accords to the plaintiffs, each having a significant interest in individually controlling the prosecution of separate actions.

Finally, putative Plaintiffs' peers and co-workers dispute the story that is being told, indicating that individual proofs will need to be presented. Defendants should not have to pay out on frivolous or opportunistic claims because one or two Plaintiffs might be able to muster sufficient proofs (so far unseen) at trial, as reflected in the 17 opposing declarations, Gelber Dec. Ex. 1.[17]

## CONCLUSION

For the reasons and upon the authorities set forth in this Memorandum of Law, and upon the Exhibits annexed to the accompanying Declaration of Lawrence R. Gelber, Plaintiffs' motion for class certification under Rule 23 must be denied and Defendants' cross-motion to decertify the collective action brought pursuant to 29 U.S.C. §216(b) should be granted. In addition, this Court should grant such other and further relief as justice requires.

Dated:      Brooklyn, New York
            December 18, 2009

                                    Respectfully submitted,

                                    /S/ *Lawrence R. Gelber*

                                    Lawrence R. Gelber
                                    Attorney at Law
                                    The Vanderbilt Plaza
                                    34 Plaza Street, Suite 1107
                                    Brooklyn, NY 11238
                                    T:      718-638-2383
                                    F:      718-857-9339
                                    GelberLaw@aol.com

                                    *Attorney for Defendants*

---

[17] The 17 Declarations are a collective exhibit, and in alphabetical order are from: (i) M. Andreotti (New Jersey Loan Officer [NJLO]); (ii) J. Botros, Jr. (NJLO); (iii) D. Chapman (NJLO); (iv) D. DeKleine (NJLO); (v) J. Markos (New York Loan Officer [NYLO]); (vi) M. Motley (NJLO); (vii) P. Polombo (NJLO); (viii) J. Roudon (NJLO); (ix) J. Rosa (NJLO); (x) J. Sarao (NJLO); (xi) N. Tevez (NYLO); (xii) R. Sewnath (NJLO); (xiii) P. Trainer (NJLO); (xiv) J. Verdicchio (New Jersey Branch Manager [NJBM]); (xv) M. Verdicchio (New York Branch Manager [NYBM]); (xvi) B. Vallaro (NJLO); and (xvii) T. Watson (NJLO).